IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 14-cv-710 |
| | ) | |
| TWIN OAKS MOBILE HOME PARK, | ) | |
| INC., MERRILL EUGENE GUTZMER, | ) | |
| and DENNIS HANSEN, | ) | |
| Defendants. | ) | |

_____

# COMPLAINT

The United States alleges as follows:

## NATURE OF THE ACTION

1. The United States brings this action pursuant to 42 U.S.C. § 3614(a) to enforce Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988 (the "Fair Housing Act" or the "Act"), 42 U.S.C. §§ 3601-3619. It is also brought on behalf of Yesenia Aranda and her minor daughter, and Heidi Fleegel (collectively, "Complainants"), pursuant to 42 U.S.C. § 3612(o).

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 3612(o) and 3614(a).

3. Venue is proper under 28 U.S.C. § 1391(b), because (a) all the Defendants are residents of Wisconsin and at least one Defendant resides in the Western District of Wisconsin; (b) a substantial part of the events or omissions giving rise to the claims asserted herein occurred

in the Western District of Wisconsin; and (c) a substantial part of the property that is the subject of this action is situated in the Western District of Wisconsin.

## COMPLAINANTS

4.      Complainant Yesenia Aranda resides with her minor child and her parents at the Twin Oaks Mobile Home Park (hereinafter "Twin Oaks" or the "Park"), at 755 North Tratt Street, Lot #203, Whitewater, Wisconsin.

5.      Complainant Heidi Fleegel is the owner of a two-bedroom mobile home located at Lot #71 at Twin Oaks.

6.      Ms. Fleegel resided in Twin Oaks from approximately 2005 to 2011.  Ms. Fleegel currently resides in Milton, Wisconsin.

## DEFENDANTS

7.      Defendant Twin Oaks Mobile Home Park, Inc. ("Twin Oaks, Inc.") is a registered Wisconsin domestic corporation that does business in the Western District of Wisconsin.

8.      Defendant Twin Oaks, Inc. sometimes conducts business under the name "Twin Oaks Mobile Home Park and Sales."

9.      Defendant Merrill Eugene Gutzmer a/k/a M. Eugene Gutzmer a/k/a M. Eugene Gutzmer, Sr. ("Defendant Gutzmer") is the Registered Agent for, and principal of, Twin Oaks, Inc.

10.     At all times relevant to this Complaint, Defendant Gutzmer has been responsible for the overall management of Twin Oaks.

11.     Defendant Gutzmer resides in and does business in Jefferson County, Wisconsin, in the Western District of Wisconsin.

12. Twin Oaks is located at 755 North Tratt Street, Whitewater, in Jefferson County, Wisconsin, within the Western District of Wisconsin.

13. There are approximately 230 mobile home lots at Twin Oaks. As of March 2014, approximately 143 lots were occupied by one or more residents.

14. The mobile homes and lots at Twin Oaks are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

15. Defendant Dennis Hansen has served since approximately 1995 as an employee of Twin Oaks and/or Defendant Gutzmer. At all relevant times, Defendant Hansen has been the on-site manager responsible for the day-to-day operations of Twin Oaks.

16. Defendant Hansen resides in and does business in Jefferson County, in the Western District of Wisconsin.

## TWIN OAKS, INC.'S OCCUPANCY RULES AND POLICIES

17. Defendants have maintained and enforced rules relating to residency at Twin Oaks that are contained within a document titled "The Twin Oaks Mobile Home Park, Inc. Rules" (the "Rules").

18. The Rules are incorporated into the rental leases Defendants use for Twin Oaks. The leases state that the failure to observe any of the terms of the Rules constitutes default.

19. Since at least 1995, Defendants have stated, maintained, and enforced a policy and practice of prohibiting families with children from residing in certain lots in the area of Twin Oaks that they define as the "low activity area," including lots 68 through 116, and lots 129 through 139. Defendants reserve the "low activity area" for elderly persons and non-elderly adults without minor children.

20. In a section titled "Occupancy Limits," the Rules contain the following provision:

3

> Lot assignments are based on: number of occupants, pets or not [sic] pets, aged or infirm tenants that may be adversely affected by small children and to keep small children out of high traffic areas, closeness to bus stop and play areas, and high activity and low activity outside the home. . . . Some exceptions are permitted, in writing, as a family grows and does not become disruptive to neighbors or quality of lot and street use.
>
> . . .
>
> Swing sets are prohibited from the same lots as dogs and from lots #80 through #88.
>
> . . .
>
> Our low activity area is the same as the no dog area and **we try to keep lots 68 through 116, 129 through 139 for our senior citizens. Exceptions to this plan have occurred because sellers of homes have ignored office approval procedures. We are restoring this intended balance for Twin Oaks and we are holding all lessees to compliance.** (emphasis added).

21.    The Rules also require that children stay on their own lots or in the playground provided and that children "stay out of other tenant's [sic] yard [sic]."

22.    The Rules set the following occupancy limits for Twin Oaks: "No more than two tenants are to occupy the lots numbered 1 to 8, 17 to 24, 33 to 39, 48 to 50, 51-60, 69 to 108, and 190 to 195. No more than three tenants are to occupy the lots numbered 9 to 16, 25 to 32, 40 to 46, 61 to 67, 110 to 147, 150 to 169, and 217. No more than four tenants are to occupy the lots numbered 47, 109, 149, 196 to 203, and 170 to 187."

23.    The occupancy limits described above are based on the location of each specified lot in relation to the front entrance of the Park. The occupancy limits are not based on the sizes of the mobile homes that are or could be placed on each lot at the Park.

4

24. The occupancy limits described above are not based on occupancy restrictions imposed by the City of Whitewater or by any other governmental entity with jurisdiction over Twin Oaks.

### MS. ARANDA'S ATTEMPT TO PURCHASE THE SUBJECT RESIDENCE

25. Ms. Fleegel purchased her mobile home located on Lot # 71 (the "subject residence") at Twin Oaks in approximately July 2005.

26. At the time that she purchased her home, Defendant Hansen told her that Lot #71 was for "older people" but that it would not be a problem for Ms. Fleegel because she had no children, or words to that effect.

27. At the time Ms. Fleegel moved in to Twin Oaks in 2005, Ms. Fleegel was approximately 29 years old.

28. Defendants charge Ms. Fleegel a monthly rental fee of $297 to lease Lot #71.

29. Ms. Fleegel has not resided at Twin Oaks since approximately 2011. Since then, Ms. Fleegel's mobile home has been vacant.

30. Ms. Fleegel has been attempting to sell her mobile home in Twin Oaks since approximately 2012.

31. In or around November 2013, Ms. Aranda learned that Ms. Fleegel was selling the mobile home located on Lot #71.

32. After viewing the home on Lot #71, Ms. Aranda agreed to purchase the home from Ms. Fleegel for $2,500. Ms. Aranda paid a $100 deposit to Ms. Fleegel as a down-payment toward the agreed sale of the mobile home.

33. On or about November 18, 2013, Ms. Aranda visited the Twin Oaks management office, explained to Defendant Hansen that she was purchasing Ms. Fleegel's mobile home, and asked for a lease application to rent Lot #71.

34. In response, Defendant Hansen gave Ms. Aranda an application to fill out and showed her a copy of the Rules for Twin Oaks.

35. Ms. Aranda filled out the lease application during her visit and handed it back to Defendant Hansen. Ms. Aranda listed herself and her two-year-old child as intended occupants for the subject residence. Ms Aranda listed her parents' mobile home lot, Lot #203 at the Park, as her then-current address.

36. During the same visit to the Park management office described above, Ms. Aranda read the Rules and noticed the provision referenced above in paragraph 20 that stated: " . . . we try to keep lots 68 through 116, 129 through 139 for our senior citizens."

37. Ms. Aranda pointed out the provision described above, and asked Defendant Hansen whether there would be a "problem" because Lot #71 was identified as being for "senior citizens," or words to that effect.

38. Defendant Hansen responded, "I don't know, I am going to get back to you," or words to that effect.

39. On or about November 30, 2013, Defendant Hansen notified Ms. Aranda that the Defendants had rejected her application to lease Lot #71 because it is located in an area reserved for elderly residents, or words to that effect.

40. In response, Ms. Aranda pointed out to Defendant Hansen that the subject residence is owned by Ms. Fleegel, who is not an elderly person, but is in her "thirties or forties."

6

41.     Defendant Hansen replied that he could rent Lot #71 to her if she "lived alone," but that her minor child could not live there, or words to that effect.

## HUD INVESTIGATION AND CHARGE

42.     On or about November 30, 2013, Ms. Aranda filed a timely complaint with the United States Department of Housing and Urban Development ("HUD") alleging, among other things, that Defendant Hansen had engaged in discriminatory housing practices on the basis familial status.

43.     Ms. Aranda amended her complaint on or about February 3, 2014, to add, as respondents, Defendant Gutzmer and Twin Oaks, Inc., and to identify her two-year-old child as an "aggrieved person," as defined by 42 U.S.C. § 3602(i).

44.     On or about February 7, 2014, Ms. Fleegel filed a timely HUD complaint against the Defendants, alleging that Defendants violated the Act by interfering, on the basis of Ms. Aranda's familial status, with Ms. Fleegel's right to sell the subject residence to Ms. Aranda.

45.     On or about June 25, 2014, and July 8, 2014, Complainants amended their HUD complaints to identify each other and Ms. Aranda's minor child as aggrieved parties to their complaints.

46.     On or about January 27, 2014, in his response to Ms. Aranda's HUD Complaint, Defendant Hansen stated to HUD, in pertinent part:

> Twin Oaks has avoided putting homes with children in a defined area near the entrance of the park for safety reasons – because the area is the high traffic area. This area and policy has [sic] been established for over two decades. This area is also included in our no dog area in part for the same reason. Playground equipment (such as swing sets) are [sic] prohibited in part of the area to avoid attracting kids in the park into the high traffic area. If the mobile home was in a different area of Twin Oaks or if it was

7

        moved to another area of Twin Oaks there would not be an issue.

47.    On or about February 1, 2014, in another response to Ms. Aranda's HUD complaint, Defendant Hansen stated to HUD, in pertinent part, that "[t]enants in the adult section deserve to have the peace the policy is intended to provide for them as stated in the rules. . . ."

48.    On or about March 17, 2014, in an interview with a HUD investigator, Defendant Gutzmer:

    (a) admitted that the Park has enforced restrictions on dogs, children, and "play stuff" in a particular area of Twin Oaks for "fifty years";

    (b) told the HUD investigator that the Defendants created the restricted area of the Park to address the issues of children "attracting other children to play"; and

    (c) admitted that the Defendants rejected Ms. Aranda's application to lease Lot #71 because she had a minor child who would live there with her.

49.    Pursuant to 42 U.S.C. § 3610, the Secretary of HUD conducted and completed an investigation of the complaints described above, attempted conciliation without success, and prepared a final investigative report. Based on the information gathered in this investigation, the Secretary, pursuant to 42 U.S.C. § 3610(g)(1), determined that reasonable cause existed to believe that Defendants committed illegal discriminatory housing practices against the Complainants. Therefore, on September 2, 2014, the Secretary issued a Charge of Discrimination ("Charge"), pursuant to 42 U.S.C.§ 3610(g)(2)(A), charging that Defendants have engaged in discriminatory practices, in violation of the Fair Housing Act.

50. On September 17, 2014, Ms. Aranda made a timely election, under 42 U.S.C. § 3610(a), to have the claims asserted in the Charge decided in a civil action in federal district court.

51. On September 18, 2014, the Secretary of HUD authorized the Attorney General to commence a civil action, pursuant to 42 U.S.C § 3612(o).

## FIRST CLAIM FOR RELIEF

52. Plaintiff repeats the allegations contained above as if fully set forth herein.

53. Through the actions described above, Defendants have:

    (a) refused to rent, or to negotiate for the rental of, or otherwise made unavailable or denied, dwellings because of familial status, in violation of 42 U.S.C. § 3604(a);

    (b) discriminated in the terms, conditions, or privileges of rental of dwellings because of familial status, in violation of 42 U.S.C. § 3604(b);

    (c) made, or caused to be made, statements with respect to the rental of dwellings that indicate a preference, a limitation or discrimination based on familial status, in violation of 42 U.S.C. § 3604(c); and

    (d) interfered with persons in the exercise or enjoyment of, or on account of her having exercised or enjoyed, or on account of her having aided or encouraged any other person in the exercise or enjoyment of, a right granted or protected under the FHA, in violation of 42 U.S.C. § 3617.

54. Complainants are aggrieved persons, as defined in 42 U.S.C. § 3602(i), and have been injured as a result of Defendants' conduct described above.

55. The discriminatory actions of Defendants were intentional, willful and taken in disregard for the rights of others.

## SECOND CLAIM FOR RELIEF

56. Plaintiff repeats the allegations contained above as if fully set forth herein.

57. The conduct of Defendants described above constitutes:

(a) a pattern or practice of resistance to the full enjoyment of rights secured by Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. §§ 3601-3619; or

(b) a denial to a group of persons of rights granted by Title VIII of the Civil Rights Act of 1968, as amended by the Fair Housing Amendments Act of 1988, 42U.S.C. §§ 3601- 3619, which denial raises an issue of general public importance.

58. In addition to Complainants, there are other persons who may have been injured by Defendants' discriminatory actions and practices. Such persons are aggrieved persons as defined in 42 U.S.C. §3602(i).

## PRAYER FOR RELIEF

WHEREFORE, the United States prays that the Court enter an Order that:

1. Declares that Defendants' policies and practices, as alleged herein, violate the Fair Housing Act, 42 U.S.C. §§ 3601-3619;

2. Enjoins Defendants, their officers, employees, agents, successors and all other persons in active concert or participation with any of them, from:

(a) Discriminating on the basis of familial status in violation of the Fair Housing Act §§ 3601-3619;

      (b) Failing or refusing to take such steps that may be necessary to prevent the recurrence of any discriminatory conduct in the future and to eliminate, to the extent practicable, the effects of the Defendants' unlawful housing practices; and

      (c) Failing to or refusing to take such affirmative steps as may be necessary to restore, as nearly as practicable, the Complainants and any other persons injured by Defendants' unlawful practices to the position they would have been in but for the discriminatory conduct.

3. Awards monetary damages, pursuant to 42 U.S.C. §§ 3612(o)(3), 3613(c)(1), and 3614(d)(1)(B) to Complainants and all other persons injured by the Defendants' discriminatory practices; and

4. Assesses a civil penalty against Defendants in an amount authorized by 42 U.S.C. § 3614(d)(1)(C) and 28 C.F.R. § 85.3(b)(3) to vindicate the public interest.

    The United States further prays for such additional relief as the interest of justice may require.

Dated: October 17, 2014

                                            ERIC H. HOLDER, JR.
                                            Attorney General

                                            *s/ Molly J. Moran*

JOHN W. VAUDREUIL                 MOLLY J. MORAN
United States Attorney                  Acting Assistant Attorney General
                                            Civil Rights Division

*s/ Barbara L. Oswald*                 *s/ Steven H. Rosenbaum*
BARBARA L. OSWALD                 STEVEN H. ROSENBAUM
Assistant United States Attorney      Chief
222 West Washington Ave. Ste. 700   Housing & Civil Enforcement Section
Madison, WI 53703-2775               Civil Rights Division
Phone: (608) 264-5158
barbara.oswald@usdoj.gov             *s/ Lori K. Wagner*
                                            TIMOTHY J. MORAN
                                            Deputy Chief
                                            LORI K. WAGNER
                                            Trial Attorney
                                            United States Department of Justice
                                            Civil Rights Division
                                            Housing & Civil Enforcement Section- G St.
                                            950 Pennsylvania Avenue, N.W.
                                            Washington, D.C. 20530
                                            Tel.: (202) 305-3107
                                            Fax: (202) 514-1116
                                            lori.wagner@usdoj.gov