IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.  14-cv-710 |
| | ) | |
| TWIN OAKS MOBILE HOME PARK, | ) | |
| INC., MERRILL EUGENE GUTZMER, | ) | CONSENT DECREE |
| and DENNIS HANSEN, | ) | |
| Defendants. | ) | |

## I. INTRODUCTION

1.     The United States initiated this action on October 17, 2014, on behalf of Yesenia Aranda and her minor child, and Heidi Fleegel ("Complainants") under 42 U.S.C. §§ 3612(o) and 3614(a).  Defendants are Twin Oaks Mobile Home Park, Inc. ("Twin Oaks, Inc."), Merrill Eugene Gutzmer ("Defendant Gutzmer"), and Dennis Hansen ("Defendant Hansen") (collectively, "Defendants").  Defendants are/or were owners, operators, and managers of the 230-lot Twin Oaks Mobile Home Park (hereinafter "Twin Oaks" or the "Park"), located at 755 North Tratt Street, Whitewater, Wisconsin.

2.     The United States' complaint alleges that the Defendants violated the Fair Housing Act ("FHA"), as amended, 42 U.S.C. §§ 3601 *et seq.*, by discriminating on the basis of *familial status in the* rental of dwellings at the Park, by making statements with respect to the rental of dwellings that indicate a preference, a limitation, or discrimination based on familial status, and by retaliating against persons exercising rights protected by the FHA.

3.     Defendant Hansen is employed by Twin Oaks, Inc. and was employed at the time of the events alleged in the complaint and provided management services at the Park.  Defendant Gutzmer is the sole principal of Twin Oaks, Inc.

4.      The mobile homes and lots at Twin Oaks are "dwellings" within the meaning of 42 U.S.C. § 3602(b).

5.      This matter arises out of complaints that the Complainants filed with the United States Department of Housing and Urban Development ("HUD") beginning on or around November 30, 2013. Ms. Aranda's complaint alleged that on November 30, 2013, Defendant Hansen rejected her application to rent a mobile home lot at Twin Oaks, lot #71 ("subject property"), subjected her to different and less-favorable treatment and terms and conditions of rental compared with applicants who do not have children, and made statements indicating a limitation, a preference, or discrimination, based on her familial status, all in violation of the FHA. Ms. Fleegel's complaint alleged that on November 30, 2013, Defendants violated the Act by interfering, on the basis of Ms. Aranda's familial status, with Ms. Fleegel's right to sell a mobile home located on the subject property to Ms. Aranda. The Complainants alleged that Defendants' discriminatory conduct caused them economic harm and other damages.

6.      Under FHA §§ 3610(a) and (b), the Secretary of HUD ("the Secretary") completed an investigation of the complaints described above, which included interviews of the Complainants, witnesses, and property management staff of the Park.

7.      On September 2, 2014, based on evidence gathered in its investigation in this matter, the Secretary, under FHA § 3610(g)(1), determined that reasonable cause exists to believe that Defendants engaged in discriminatory housing practices based on familial status in violation of the FHA. Accordingly, based on the Determination of Reasonable Cause issued on September 2, 2014, HUD issued a Charge of Discrimination (the "Charge") against Defendants for engaging in discriminatory housing practices against Ms. Aranda, in violation of FHA

§§ 3604(a), (b), and (c) and § 3617; and against Ms. Fleegel, in violation of FHA § 3617.  On

September 17 and 19, 2014, respectively, Ms. Aranda and Ms. Fleegel filed timely elections,

under FHA § 3610(a), to have their claims asserted in the Charge decided in a civil action in

federal district court.  Following the Complainants' elections, on September 18, 2014, the

Secretary of HUD authorized the Attorney General to commence a civil action, pursuant to FHA

§ 3612(o).  On October 17, 2014, the United States filed this action to enforce the provisions of

the FHA.

      8.     The United States alleges that the Defendants have engaged in housing practices

that discriminate on the basis of familial status and that they have retaliated against persons

exercising their rights under the FHA by:

      a.     stating, maintaining, and enforcing a policy and practice of prohibiting families

with children from residing in certain lots in the section of Twin Oaks that they define as the

"low activity area";

      b.     adopting and maintaining rules and policies that limit the number of persons who

may reside in certain homes in the Park, based on the location of the lots ("Occupancy Limits")

without regard to the number of bedrooms in each home, or to relevant safety standards, or to

regulations of the City of Whitewater or other governing entities, thereby restricting and denying

housing opportunities based on familial status;

      c.     adopting and maintaining Park rules and policies that set aside certain homes and

apply different rules, based on the location of the lots for "senior citizens," or "elderly,"

residents;

      d.     adopting and maintaining Park rules and policies that impose burdens on children,

for example, rules that require children to stay on their own lots or in the playground provided

and that children stay out of other tenants' yards;

e.     adopting Park rules and policies that prohibit or restrict the activities of children in some of the streets and common areas of the property, and barring children's play equipment from particular areas of the Park;

f.     adopting Park rules and practices that threaten tenants with adverse consequences, including that Defendants will initiate eviction proceedings, if residents violate Park rules regarding children and their activities;

g.     interfering with the contract for sale between Ms. Aranda and Ms. Fleegel, thereby causing economic and other harm to Complainants by delaying the sale of the subject property;

h.     denying Ms. Aranda's rental application for the subject property on the basis of familial status because she intended to live with her minor child at Twin Oaks; and

i.     charging additional fees and penalties to families because of the presence of children.

9.     The United States alleges that, through this conduct, the Defendants have:

a.     violated 42 U.S.C. § 3604(a) by making unavailable and/or denying housing because of familial status;

b.     violated 42 U.S.C. § 3604(b) by discriminating in the terms, conditions, or privileges of rental of a dwelling, and/or in the provision of services or facilities in connection therewith, because of familial status;

c.     violated 42 U.S.C. § 3604(c) by making, printing, or publishing, and/or causing to be made, printed, or published, any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on familial status,

4

or an intention to make any such preference, limitation, or discrimination;

   d.  violated 42 U.S.C. § 3617 by coercing, intimidating, threatening, and/or interfering with persons exercising or enjoying, and/or because persons exercised or enjoyed, rights protected under the FHA; and

   e.  violated 42 U.S.C. § 3614(a) by engaging in a pattern or practice of resistance to the full enjoyment of rights granted by the FHA, and/or denying fair housing rights to a group of persons, raising an issue of general public importance.  This pattern or practice included the maintenance of a policy prohibiting families with children from residing in certain parts of the Park and limiting the number of persons who may reside in certain homes based on their location, irrespective of safety or other relevant standards.

   10.  Each Defendant represents that Twin Oaks is the only residential rental property and the only mobile home park that they individually or collectively own or manage.  Further, the Defendants represent that they have not owned and/or managed mobile home parks(s) or residential rental property other than Twin Oaks, Inc., in the past five (5) years.

   11.  Following settlement discussions between the parties, the Defendants waived their objections to the sale of the mobile home on Lot #71 to Ms. Aranda.  The Defendants approved Ms. Aranda's lease application for Lot # 71, and, subsequently, on March 25, 2015, the Complainants completed the sale of the mobile home located on Lot #71.  Ms. Aranda's lease for the subject premises took effect on April 1, 2015, although due to damages to the premises, which Ms. Aranda alleges were caused in whole or part by the length of time in which it remained vacant, she was unable to take occupancy of the home at that time.  Ms. Aranda has, however, subsequently taken occupancy of the home.   It is acknowledged by the parties that on or about March 31, 2015, Ms. Aranda paid the Defendants one hundred ten dollars ($110) toward

her security deposit for the subject property. It is further acknowledged that Ms. Aranda paid lot rent for the subject property for April 2015 through December 2015 (in the amount of three hundred seven dollars ($307) per month).

12.     The parties have chosen to resolve this matter through a negotiated settlement. By their signatures below, the parties hereby consent to the entry of this Consent Decree and the attached Judgment.

Therefore, it is **ADJUDGED, ORDERED and DECREED** as follows:

## II. GENERAL INJUNCTION

13.     The Defendants, their agents, employees, successors, and all persons in active concert or participation with them are hereby enjoined, with respect to the rental of dwellings,[1] including the rental of mobile homes and mobile home lots, from:

    a.   making unavailable or denying a dwelling to any person because of familial status;

    b.   discriminating against any person in the terms, conditions, or privileges of the rental of a dwelling, or in the provision of services or facilities in connection therewith, because of familial status;

    c.   making, printing, or publishing, or causing to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on familial status, or an intention to make any such preference, limitation, or discrimination; and

---

[1] The term "dwellings" has the meaning set out in the Fair Housing Act, 42 U.S.C. § 3602(b).

d.  coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, any right granted or protected by § 804 of the FHA.

### III. SPECIFIC INJUNCTIVE RELIEF

14.  Upon entry of this Consent Decree, Defendants shall implement the Nondiscrimination Policy appearing at **Appendix A** at the Park, and at all properties owned or managed by the Defendants for the duration of the Consent Decree.

15.  Defendants shall, upon entry of this Consent Decree, abandon and cease enforcement and publication of, policies, newsletters, community rules, lease provisions, rental documents, and any other statements that discriminate on the basis of familial status. This Paragraph requires, among other things, that the Defendants abandon and cease enforcement and publication of Twin Oaks, Inc.'s practices, rules, and policies that:

a.  prohibit families with children from living in particular sections of or homes within the Park;

b.  limit in a discriminatory manner the use of the Park by children (persons under the age of 18) in the common areas and outside the children's homes;

c.  establish Occupancy Limits regarding the number of persons who may reside in certain homes, based on the location of the lots without regard to the number of bedrooms or to relevant safety standards, or to regulations of the City of Whitewater or other governing entities;

d.  set aside certain lots and/or homes in the Park for "senior citizens," or otherwise establishing an "adult section" or a section reserved for "elderly" residents;

e.  ban or limit the use of play equipment primarily used by children, including

bicycles, tricycles, skateboards, scooters, and other recreational equipment in certain areas of the Park, provided, however that:  (i) this shall not prohibit Twin Oaks from barring all residents, regardless of age, from engaging in conduct in the streets that is prohibited by state or local law on Whitewater public streets; and (ii) Twin Oaks shall maintain the ability to approve or reject installed, grounded play equipment, such as swing sets, to the extent that they present a danger based on proximity to utility locations;

    f.   ban or limit recreational activities primarily engaged in by children, such as playing of soccer or team sports, provided, however, that this shall not prohibit Twin Oaks from barring all residents, regardless of age, from engaging in such conduct on lots leased by other Twin Oaks residents without such other residents' permission, or on lots on which unoccupied trailers are located without Twin Oaks' permission;

    g.   enforce Park rules (such as rules regarding the issuance of resident parking permits, lawn mowing, and other home maintenance rules) inconsistently in different sections of the Park;

    h.   cause or permit the initiation of eviction proceedings for breach of policies regarding the presence of and activities by children; and

    i.   cause or permit the imposition of fees and penalties to Twin Oaks families because of the presence of children.

16.     Subject to the procedures set out in Paragraph seventeen (17), *infra*, Defendants may adopt new policies or practices that do not discriminate on the basis of familial status. Defendants may not impose, maintain, ratify, implement, or enforce any policy or practice that replicates the prohibitions set out in Paragraph fifteen (15) (a) – (i), *supra*.

17.     If any Defendant, or any of their officers, directors, agents, employees, or any

person in active concert or participation with them, elects to adopt new practices, policies or rules with respect to children, or activities typically engaged in by children, or other practices, policies, or rules addressed by Paragraph fifteen (15), *supra*, Defendants must submit these proposed policies and rules to the United States for review and approval at least forty-five (45) days prior to their proposed effective date. The United States shall have thirty (30) days following receipt of these policies to communicate any objections to counsel for Defendants. The parties shall, in good faith, attempt to resolve any disagreements over the terms of the proposed policies. If the parties cannot agree, any party may move the Court for relief. The provisions of the proposed policies to which there are disputes shall not be placed into effect until the parties or the Court resolves the disputes.

### IV. NOTICE OF NON-DISCRIMINATORY POLICIES

18.     Within forty-five (45) days of the entry of the Consent Decree, Defendants or their designee(s) shall distribute to all current tenants at the Park the Nondiscrimination Policy at **Appendix A**; a detailed summary of this Consent Decree, which shall be approved in advance by the United States; and a written notice that the Defendants have rescinded the policies set forth in Paragraph fifteen (15), *supra*. Defendants may distribute new policies, approved by the United States pursuant to Paragraph sixteen (16), *supra*, at this time or at any time following their approval.

19.     Within thirty (30) days of the entry of this Consent Decree, Defendants shall distribute the Nondiscrimination Policy, a copy of this Consent Decree, and a written notice that the Defendants have rescinded their policies, as required by Paragraph fifteen (15), *supra,* to all of its current managers, agents, employees, and anyone acting under the direction of any of the Defendants who:  (a) have responsibility for showing, renting, managing, or operating any and

all dwelling units, including units at the Park, at properties owned and/or managed by Defendants; or (b) make decisions regarding tenants or who make or enforce Twin Oaks policies

20.     Defendants may post new policies with respect to children after they have been approved by the United States as required by this Consent Decree. Within thirty (30) days of the entry of the Consent Decree, Defendants or their designee(s) must post the Nondiscrimination Policy and a notice in each property's rental and/or management office for a minimum of ninety (90) consecutive days that the Defendants have rescinded their policies, as required by Paragraph fifteen (15), *supra*, at Twin Oaks.

21.     Within thirty (30) days of the entry of the Consent Decree, Defendants must provide written notice to and meet with each agent and employee who has responsibility for showing, renting, managing or operating any and all dwelling units at the Park, explaining the changes in the Park's policies and practices. This notice shall include a copy of this Consent Decree and a statement that the Defendants have rescinded their policies, as required by Paragraph fifteen (15), *supra*.

22.     Within ninety (90) days of the entry of this Consent Decree, Defendants or their designee(s) shall secure a signed statement from each agent and employee who has responsibility for showing, renting, managing, or operating any and all dwelling units at the Park, at all properties managed by Defendants, acknowledging that he or she has received, read, and understands the Consent Decree and the Nondiscrimination Policy. The statement must include that the employee has had an opportunity to have questions about these documents answered and agrees to abide by the relevant provisions of the Consent Decree and the Nondiscrimination Policy. This statement shall be in the form of **Appendix B**.

23. During the term of this Consent Decree, within thirty (30) days after each new agent or employee becomes involved in showing, renting, or managing units at the Park and at all properties owned or managed by Defendants, Defendants shall provide a copy of this Consent Decree and the Nondiscrimination Policy to each such agent or employee and secure his or her signed acknowledgment in the form of **Appendix B**.

24. Within thirty (30) days of the entry of this Consent Decree, Defendants or their designees shall take the following steps to notify the public of the Nondiscrimination Policy in effect at the Park, at all properties owned and/or managed by Defendants:

a. Prominently post at all rental offices that Defendants currently or subsequently use for the rental of dwellings a fair housing sign no smaller than 10 inches by 14 inches that indicates that all units are available for rent on a nondiscriminatory basis. A poster that comports with 24 C.F.R. Part 110 will satisfy this requirement;

b. Include the words "Equal Housing Opportunity" and/or the fair housing logo in all rental advertising conducted by the Defendants, or their agents or employees, in newspapers, flyers, handouts, telephone directories, and other written materials; on radio, television, internet, or other media broadcasts; and on all billboards, signs, pamphlets, brochures, and other promotional literature, provided that this requirement does not compel the Defendants to advertise in any of these media, but does require compliance with this provision whenever the Defendants so advertise. The words and/or logo shall be prominently placed and easily readable; and

c. Include the following phrase in the rental application(s), leases, and other rental agreement(s) used for renting lots and/or dwelling units from the date of this Consent

Decree going forward in boldface type, using letters of equal or greater size to those of the text in the body of the document:

> We are an equal housing opportunity provider.
> We do not discriminate on the basis of
> familial status (having children under age 18)
> race, color, sex, national origin, religion, or disability.

## V. TRAINING

25.    Within ninety (90) days of the date of entry of this Consent Decree, Defendants and all managers, agents, and employees who make decisions regarding tenants or who make or enforce Twin Oaks policies at the Park shall undergo in-person training on the FHA, with specific emphasis on discrimination on the basis of familial status and retaliation for exercising or enjoying rights protected by the FHA. The training shall be conducted by an independent, qualified third party identified by the Defendants and approved by the United States. In the event that, due to medical conditions, Defendant Gutzmer is unable to participate in the in-person training, he will be excused from the training provided that: (a) his doctor provides counsel for the United States written instructions stating that Defendant Gutzmer is medically unable to participate in the training; and (b) he does not directly or indirectly manage the Park or any other residential rental properties until such time as he completes the training. Defendants represent that Defendant Hansen and Defendant Gutzmer's son, Merrill Eugene Gutzmer, Jr., will serve as the new Park managers and that they will undergo the in-person training required by this paragraph, in addition to other managers, agents, and employees who make decisions regarding tenants, or make or enforce Twin Oaks policies, who shall also be required to undergo such in-person training as specified herein. Any expenses associated with this training shall be borne by

the Defendants. Each individual who receives the training shall execute the Certification of
Completion of Training, appearing at **Appendix C**.

## VI. MONETARY PAYMENTS

26.     Within ten (10) days after the entry of this Consent Decree, or by December 15,
2015, whichever is later, the Defendants shall pay damages for the claims brought by
Complainants as follows:

a.   Yesenia Aranda:  Twin Oaks shall send to counsel for the United States a
check payable to Yesenia Aranda for twenty-nine thousand seven hundred eighty
dollars ($29,780).  This amount shall compensate her and her daughter for all
damages relating to this case, including:  supplies she purchased for plumbing and
other repairs to the subject property, labor for these repairs, loss of civil rights, out
of pocket expenses, emotional distress damages, and all other harm.

b.   Heidi Fleegel:  Twin Oaks shall send to counsel for the United States a
check payable to Heidi Fleegel ten thousand three hundred ninety eight dollars
($10,398).  This amount shall compensate her for all damages relating to this case,
including:  loss of civil rights, out of pocket expenses caused by Defendants'
conduct, emotional distress, and all other harm.

Defendants specifically acknowledge that the Complainants do not owe any additional amounts
to Defendants individually or collectively as of the date of this settlement.  Counsel for the
United States will distribute the checks described in this Paragraph once the payees have
executed and returned to the United States written releases (in the form of **Appendix D**) of all
claims, legal or equitable, that the payee might have against the Defendants related to this
litigation.  Thereafter, the United States shall deliver to counsel for the Defendants the original,

executed releases. This provision is not meant to waive Ms. Aranda's December 2015 rent payment.

27.     Within twenty (20) days of the entry of this Consent Decree, Twin Oaks shall pay to the United States Treasury forty five thousand dollars ($45,000) for the purpose of compensating the aggrieved persons whom the Court determines may have been harmed by the Defendants' discriminatory practices (hereinafter "aggrieved persons"). This money shall be referred to as the "Settlement Fund." The United States will provide instructions to counsel for the Defendants on how to make the payment required by this paragraph.

28.     All notices required under this Consent Decree to be published, posted, and otherwise communicated, shall be issued in both English and Spanish. The United States will provide Spanish versions of the notices to Defendants within seven (7) business days of entry of this Consent Decree, or by December 18, 2015, whichever is later.

29.     Within thirty (30) days of the entry of this Consent Decree, Defendants shall publish the Notice set forth in **Appendix E** in three (3) editions of three (3) separate newspapers that are widely circulated within ninety (90) miles of Whitewater, Wisconsin. These newspapers shall be approved by the United States prior to the Notice's publication. This Notice shall be no smaller than three (3) columns by six (6) inches and shall be published on three (3) occasions in the news section. The publication dates shall be separated from one another by at least twenty-one (21) days, and at least two (2) of the publication dates shall be Sunday. All of the costs associated with this Notice, its publication, and distribution shall be borne by Defendants.

30.     Within thirty (30) days of the entry of this Consent Decree, Defendants shall use reasonable efforts to provide a copy of the Notice set forth in **Appendix E** to: (a) each of its current Park residents; (b) former residents who resided at the Park at any time from January 1,

1995, to the present; (c) all current residents at all other properties currently or formerly managed by any Defendant; and (d) former residents who resided at all properties currently or formerly managed by any Defendant at any time from January 1, 1995, to the present . Such reasonable efforts shall include, but shall not be limited to, mailing copies of the Notices to residents' last known addresses.  If a former or current resident is deceased, or incapacitated, Defendants shall send a copy of the Notice set forth in **Appendix E** to the last known next of kin or other responsible party identified in Defendants' records.

31.     Within thirty (30) days of the entry of this Consent Decree and throughout the term of this Decree, Defendants shall make available to the United States for inspection and copying all resident records for the Park and for all properties managed by Defendants since January 1, 1995, for the United States' use in identifying potential aggrieved persons.  Such records shall include, but not be limited to, records relating to resident complaints, denials of applications, and records relating to lease violations involving children.

32.     Nothing in this Consent Decree shall preclude the United States from making its own efforts to locate and provide notice to potential aggrieved persons (such as conducting door-to-door interviews of current residents).

33.     Within one hundred eighty (180) days of entry of this Consent Decree, the United States shall make preliminary determinations as to which additional persons are aggrieved and an appropriate amount of damages that should be paid to each aggrieved person.  Defendants shall permit the United States, upon reasonable notice, to review and copy any records that may facilitate its determinations regarding the claims of allegedly aggrieved persons.  The United States will inform Defendants in writing of its preliminary determinations, together with a copy of a sworn declaration from each aggrieved person setting forth the factual basis of the claim.

With respect to any identified aggrieved persons, Defendants shall have seven (7) days to review the declarations and provide to the United States any documents or information that they believe may refute the claims. After completion of the process described in this Section, the parties shall submit their joint final recommendations to the Court for approval if they agree, or separate recommendations if they do not agree.

34.     The United States shall, within ten (10) days after the Court issues its Disbursement Order, issue checks to the aggrieved persons in the amounts approved by the Court, provided that the aggrieved persons have executed releases in the form of **Appendix F.** In no event shall the aggregate of all such checks exceed the amount of the Settlement Fund.

35.     In the event that less than the total amount in the Settlement Fund including accrued interest is distributed to persons deemed aggrieved by the United States, the Court shall order the remainder of the Settlement Fund ("remainder") to be distributed to a qualified organization(s) for the purpose of conducting fair housing enforcement or educational activities in South Eastern Wisconsin. Before selecting the qualified organization(s), the Defendants will obtain a proposal from the organization(s) on how the funds will be used consistent with the above-stated purpose, submit such proposal to the United States, and consult with and obtain the non-objection of the United States. The United States and the Defendants may request modification of the proposal before approving the organization(s). The parties shall thereafter seek approval from the Court to distribute the remaining funds to the qualified organization(s). The qualified organization(s) receiving the funds shall, within twelve (12) months of receipt of the funds, submit to the United States and to Defendants a report detailing how the funds were utilized. If the funds are not utilized within the first year, the qualified organization(s) shall submit to the United States and to Defendants reports every twelve (12) months detailing how

the balance of the funds were utilized every year thereafter until the funds are exhausted. The funds must be fully utilized by the organization(s) during the term of this Consent Decree.

## VII.  CREDITS TO COMPLAINANTS

36.    Twin Oaks, Inc. shall grant a credit to Ms. Aranda of two hundred twenty dollars ($220), to complete the full payment of her security deposit of three hundred thirty dollars ($330) for the subject premises, thereby reducing the balance she owes to Twin Oaks, Inc. for her security deposit and lot rent through the date of the entry of this Decree to zero dollars ($0.).

37.    Twin Oaks, Inc. shall grant a credit to Ms. Fleegel for the total amount of back lot rent to date for the subject premises, four thousand six hundred two dollars ($4,602.00), thereby reducing the balance Ms. Fleegel owes to Twin Oaks, Inc. for lot rent through the date of the entry of this Decree to zero dollars ($0).

## VIII. REPORTING AND RECORD-KEEPING

38.    The Defendants shall, no later than fifteen (15) days after occurrence, provide to the United States notification and documentation of the following events:[2]

a.   Implementation of the specific injunctive relief required by this Consent Decree, including distribution of the Nondiscrimination Policy as required by Section IV, *supra*;

b.   Implementation and distribution of the notice rescinding discriminatory rental policies and documents, as required by Section III, *supra*;

c.   Implementation and distribution of any new rental policies, as permitted by Paragraph sixteen (16), *supra;*

---

[2] Defendants will send all reports described in Section VIII and all checks described in Section VI and IX by commercial, overnight mail to:  Chief, Housing and Civil Enforcement Section, Civil Rights Division, DJ 175-11-355, United States Department of Justice, 1800 G Street, NW, Washington, D.C. 20006.

d.   Distribution of the Notice, **Appendix E**, for identification of aggrieved persons, required by Section VII, *supra*;

e.   All changes to the rules governing the conduct of residents or guests at the Park that the Defendants, or their employees or agents, have adopted in the reporting period;

f.   Implementation and distribution by the Defendants of the notice of this Consent Decree to the managers, agents, employees, and residents of any property it managed since January 1, 1995, described in Section III, *supra*;

g.   Implementation by Defendants of notice requirements set forth in Section IV, *supra,* and the training required by Section V, *supra;*;

h.   All written or oral complaints against any of the Defendants, or any of the Defendants' agents or employees, regarding any form of discrimination in housing that any of the Defendants receive from tenants or prospective tenants with children.  If the complaint(s) is/are written, the Defendants shall provide a copy(ies) of it or them with the notification.  The Defendants shall provide the full details of the complaint(s), including the complainant's name, address, and telephone number.  The Defendants shall also promptly provide the United States all information it may request concerning any such complaint(s) and shall inform the United States within fifteen (15) days of the substance of any resolution of such complaint(s); and

i.   Any employment of Defendant Dennis Hansen in the management or operation of a residential rental property, including the identity, address, and telephone number of the employer.

39.     The Defendants shall, no later than ten (10) days after each publication date of the Notice, **Appendix E**, provide to the United States a copy of each newspaper containing the Notice, described in Section VIII, *supra*.

40.     Within ninety (90) days of entry of this Consent Decree, and every six (6) months thereafter for three (3) years from the date of entry of this Decree, the Defendants shall deliver to counsel for the United States a report containing information about their compliance efforts during the preceding reporting period, including but not limited to:

a.  Copies of **Appendices B** and **C** executed pursuant to Paragraphs twenty-two (22), twenty-three (23), and twenty-five (25);

b.  Photographs of each office in which rental activity is conducted showing the fair housing signs and enforcement procedures posted, as required by this Decree;

c.  A complete list of all residents at the Park, including the number of children under age eighteen (18) in each household;

d.  Copies of all warnings and penalties issued to residents with children, or concerning the conduct of children, as a result of violations of the rules of conduct in effect at the Park during the reporting period;

e.  All rental advertisements and Notices published in local newspapers pursuant to Paragraphs 24(b) and 29, *supra*; and

f.  The applicable rules governing the conduct of residents and guests at the Park.

41.     The final report required by Paragraph forty (40), *supra,* shall be submitted to the United States no later than thirty (30) days before the expiration of this Consent Decree.

42.     During the period in which this Consent Decree is in effect, the Defendants shall preserve all records that are the source of, contain, or relate to any of the information pertinent to

their obligations under this Consent Decree.  Upon reasonable notice to counsel for the Defendants, representatives of the United States shall be permitted to inspect and copy all such records at any and all reasonable times or, upon request by the United States, the Defendants shall provide copies of such documents.

## IX. CIVIL PENALTY

43.     Within thirty (30) days after the entry of this Consent Decree, the Defendants shall make a payment of ten thousand dollars ($10,000) to the United States pursuant to 42 U.S.C. § 3614(d)(1)(C).  This payment shall be made by check payable to the United States and delivered to counsel for the United States.  The civil penalty is a debt for a fine, penalty, or forfeiture payable to and for the benefit of the United States within the meaning of 11 U.S.C. § 523(a)(7), and is not compensation for actual pecuniary loss.  No Defendant shall seek to discharge any part of this debt in bankruptcy.

## X. ACQUISITION OR TRANSFER OF INTEREST IN DWELLINGS

44.     If at any time during the term of the Consent Decree, any or all Defendants acquire a direct or indirect ownership, management, or other financial interest in any other rental property or dwelling unit, such property or units shall be subject to the requirements of the Decree.  Defendants shall notify counsel for the United States within thirty (30) days of acquiring said interest.

45.     If at any time while this Consent Decree remains in effect, Defendants decide to sell or otherwise transfer the entirety or a portion of their interest in the Park or if Defendants decide to sell or otherwise transfer their interest in the management of properties or a portion thereof to a bona-fide third party purchaser in an arm's length transaction, Defendants shall take the following steps:

a.   At least thirty (30) days prior to completion of the sale or transfer, provide the United States written notice of the Defendant's intent to sell or otherwise transfer interest in the property or management services thereof , including the prospective transferee's name, address, and telephone number;

b.   Within thirty (30) days following completion of the sale or other transfer, the Defendant shall provide the United States a copy of the documents memorializing the transfer in interest of the property;

c.   If the Defendants comply with Paragraph forty-five (45) (a-b), and transfer all ownership, management, or other financial interest to one or more properties covered by this Decree to an arms-length purchaser or other transferee, then Defendants shall thereafter be relieved of obligations under this Consent Decree with respect to the those dwelling units or property in which all interest was so transferred.  Defendants remain bound by Sections II (General Injunction), VI (Monetary Payment), VII (Credits) and IX (Civil Penalty), *supra*.

d.   For purposes of this Decree, "arms-length transaction" is defined as a transaction that has been arrived at in the marketplace between independent, non-affiliated persons, unrelated by blood or marriage, with opposing economic interests regarding that transaction.  If the proposed transfer of interest is not an arms-length transaction, the Defendants shall remain jointly and severally liable, along with the purchaser or other transferee, for the obligations or violations of this Decree for its duration.

## XI. SCOPE, DURATION AND COMPLIANCE WITH CONSENT DECREE

46.   The provisions of this Decree shall apply to all Defendants, their officers, agents, employees, successors, and assigns, and to all persons acting in active concern or participation

with them. The provisions of the Decree apply to: the Park; all properties managed by Defendants; and all properties in which Defendants subsequently acquire a direct or indirect ownership, management, or other financial interest.

47. By agreeing to entry of this Consent Decree, the United States and the Defendants agree that in the event any Defendant engages in any future violation(s) of the FHA, such violation(s) shall constitute a "subsequent violation" pursuant to 42 U.S.C. § 3614(d)(1)(C)(ii). This provision applies to any future violation, whether resolved voluntarily or through judicial proceedings.

48. The Court shall retain jurisdiction for the duration of this Consent Decree to enforce its terms, after which time the case shall be dismissed with prejudice. This Consent Decree shall be in effect for a period of four (4) years from the date of its entry. The United States may move the Court to extend the duration of the Consent Decree in the event of noncompliance, whether intentional or not, with any of its terms, or if it believes the interests of justice so require.

49. The parties shall endeavor in good faith to resolve informally any differences regarding interpretation of and compliance with this Consent Decree prior to bringing such matters to the Court for resolution. However, in the event the United States contends that there has been a failure by a Defendant, whether willful or otherwise, to perform in a timely manner any act required by this Consent Decree or otherwise to act in conformance with any provision thereof, the United States may move this Court to impose any remedy authorized by law or equity, including, but not limited to, an order requiring performance of such act or deeming such act to have been performed, and an award of any damages, costs, and reasonable attorneys' fees which may have been occasioned by the violation or failure to perform.

50.     Any time limits for performance imposed by this Consent Decree may be extended by mutual written agreement of the parties.  The other provision of this Consent Decree may be modified by written agreement of the parties or by motion to the Court.  If the modification is by written agreement of the parties, then such modification will be effective upon filing of the written agreement with the Court, and shall remain in effect for the duration of the Consent Decree or until such time as the Court indicates through written order that it has not approved the modification.

### XII. EFFECT ON LITIGATION HOLDS

51.     The parties agree that, as of the date of entry of this Consent Decree, litigation is not reasonably foreseeable concerning the matters described herein.  To the extent that any party previously implemented a litigation hold to preserve documents, electronically stored information, or things related to the matters described in this Consent Decree, the party is no longer required to maintain such a litigation hold.

52.     The preceding Paragraph does not relieve the Defendants of any record keeping responsibilities imposed by the terms of this Consent Decree.

### XIII. COSTS OF LITIGATION

53.     Each party to this litigation will bear its own costs and attorneys' fees associated with this litigation.


IT IS SO ORDERED, this _17TH_ day of _DECEMBER_ 2015.


_____
United States District Judge

*For the United States:*

JOHN W. VAUDREUIL
United States Attorney


 *s/*
_____
BARBARA L. OSWALD
Assistant United States Attorney
222 West Washington Ave. Ste. 700
Madison, WI 53703-2775
Phone:  (608) 264-5158
barbara.oswald@usdoj.gov

 *s/*
_____
VANITA GUPTA
Principal Deputy Assistant Attorney General
Civil Rights Division


 *s/*
_____
STEVEN H. ROSENBAUM
Chief
TIMOTHY J. MORAN
Deputy Chief
Lori K. Wagner
Trial Attorney
United States Department of Justice
Civil Rights Division
Housing & Civil Enforcement Section- G St.
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Tel.:  (202) 305-3107
Fax:  (202) 514-1116
lori.wagner@usdoj.gov


*For the Defendants*


 *s/*
_____
JOHN J. LAUBMEIER
Stroud, Willink & Howard, LLC
25 West Main Street, Suite 300
Madison, WI  53703
Telephone:  608-257-2281
Facsimile:  608-257-7643
Email:  jlaubmeier@stroudlaw.com
Counsel for the Defendants

**APPENDIX A**
**Nondiscrimination Policy**
**(Información en español al reverso)**

It is the policy of Twin Oaks Mobile Home Park, Inc. to comply with Title VIII of the Civil Rights Act of 1968, as amended, commonly known as the Fair Housing Act, by ensuring that apartments are available to all persons without regard to race, color, religion, national origin, disability, familial status (having children under age 18), or sex.  This policy means that, among other things, the owners of this property and all their agents and employees with the responsibility for renting, managing, or administering any apartments must not discriminate in any aspect of the rental of dwellings against qualified applicants or tenants.  Specifically, they may not:

A.     Refuse to rent, refuse to negotiate for the rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, national origin, disability, familial status, or sex;

B.     Discriminate against any person in the terms, conditions or privileges of rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, national origin, disability, familial status, or sex;

C.     Make,  print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, national origin, disability, familial status, or sex;

D.     Represent to persons because of race, color, religion, national origin, disability, familial status, or sex that any dwelling is not available for inspection or rental when such dwelling is in fact so available; or

E.     Coerce intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his/her having exercised or enjoyed, or on account of his/her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by the Fair Housing Act.

Any agent or employee who fails to comply with this Nondiscrimination Policy will be subject to appropriate disciplinary action.  Any action taken by an agent or employee that results in unequal service to, treatment of, or behavior toward tenants or actual or potential applicants on the basis of race, color, religion, national origin, disability, familial status, or sex may constitute a violation of state and federal fair housing laws.

Any tenant or applicant who believes that any of the above policies have been violated by any owner, agent, or employee may contact the U.S. Department of Housing and Urban Development at 1-888-799-2085, or the U.S. Department of Justice at 1-800-896-7743 or 202-514-4713.

**APPENDIX B**
**(Información en español al reverso)**
**Acknowledgment of Receipt of Consent Decree and Nondiscrimination Policy**

I have received a copy of the Consent Decree entered in *United States v. Twin Oaks Mobile Home Park, Inc., et al.,* including a copy of the Nondiscrimination Policy. I have read and understand these documents and have had my questions about these documents answered. I understand my legal responsibilities and shall comply with those responsibilities.


_____

Signature


_____

Print Name


_____

Job Title/Position


_____

Date

**APPENDIX C**

**Certification of Completion of Training**
**(Información en español al reverso)**

On _____, I completed an in-person training on the requirements of the federal Fair Housing Act, 42 U.S.C. §§ 3601-3631, as well as state and local fair housing laws, including the prohibition against discrimination based on familial status, in compliance with the Consent Decree entered by the United States District Court for the Western District of Wisconsin in *United States v. Twin Oaks Mobile Home Park, Inc., et al.*

_____
Signature

_____
Print name

_____
Job Title/Position

_____
Date

**APPENDIX D**

**Full and Final Release of Claims**
**(Información en español al reverso)**

In consideration for the parties' agreement to the terms of the Consent Decree entered in *United States v. Twin Oaks Mobile Home Park, Inc., et al.*, as approved by the United States District Court for the Western District of Wisconsin, and in consideration for the payment of $_____, I, _____ **[print name]**, do hereby agree, to remise, release, and forever discharge any and all claims of any kind, nature or description whatsoever, related to the facts at issue in the litigation referenced above, or in any way related to that litigation, up to and including the date of the entry of the Consent Decree, that I may have against Defendants Twin Oaks Mobile Home Park, Inc., M. Eugene Gutzmer, and Dennis Hansen; and their agents, employees, officers, members, estates, heirs, executors, spouses, administrators, successors, insurers, and assigns.

I acknowledge and understand that, by signing this Release, I am waiving any right to pursue my own legal action against Defendants Twin Oaks Mobile Home Park, Inc., M. Eugene Gutzmer, and Dennis Hansen based on the discrimination alleged by the United States in this case.

I also acknowledge that I have been informed that I may review the terms of this Release with an attorney of my choosing, and to the extent that I have not obtained legal advice, I voluntarily and knowingly waive my right to do so.

I waive any claims I may have against the United States, the Department of Justice, or its agents or employees, arising out of this action. This Release constitutes the entire agreement between Defendants and me, without exception or exclusion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ____ day of _____, 2015.

_____
Signature

_____
Print Name

## APPENDIX E

### NOTICE TO PUBLIC
**(Información en español al reverso)**

On _____, 2015, the United States District Court for the Western District of Wisconsin entered a Consent Decree resolving litigation brought by the United States Department of Justice involving Twin Oaks Mobile Home Park, Inc., Eugene M. Gutzmer, and Dennis Hansen relating to the Twin Oaks Mobile Home Park located at 755 North Tratt Street, Whitewater, Wisconsin, and other properties managed by the Defendants.  The litigation alleged that the Defendants discriminated against residents of these properties on the basis of familial status (because of the presence of children under the age of 18) by enforcing policies at these properties that:

* barred families with children from residing in certain lots at Twin Oaks;

* maintained rules limiting the number of persons who can live in certain homes in the Park thereby restricting and denying housing opportunities to families with children;

* maintained Park rules setting aside certain homes and applying different rules, based on the presence of children;

* imposed discriminatory burdens on children, for example, rules that required children to stay on their own lots and not play in the common areas;

* threatened tenants with negative consequences, including eviction proceedings, if residents violated Park rules regarding children and their activities;

*denied rental applications and interfered with contracts for sale of homes at Twin Oaks, because purchasers and renters were families with children; and

* charged additional fees and penalties to families because of the presence of children.

The Parties have agreed to this Consent Decree to avoid costly and protracted litigation.

Under this Consent Decree, you or an estate may be entitled to receive monetary relief if you or a family member:

- *Applied to buy a home and/or rent a lot and were rejected by Twin Oaks because you had children aged 18 or under;

- *Were required to unreasonably restrict your child(ren)'s activities while living in the Twin Oaks Mobile Home Park; or

- *Had children who were limited in the activities in which they could participate while living at Twin Oaks;

- *Took into your home family members who had applied to rent a lot and/or buy a home from Twin Oaks, but were turned down by Twin Oaks because of familial status discrimination; or

- *Received a lease violation, notice of lease non-renewal, or notice of eviction related to the fact that you had children in your household or the legal activities of your children while living in a property managed by Twin Oaks.

If you believe that you or a family member has been discriminated against in any way described above, please contact the United States Department of Justice at: 1-800-896-7743, mailbox number ___, or write or send an e-mail to:

United States Department of Justice
Attn: DJ# 175-23-820
Civil Rights Division
Housing and Civil Enforcement Section
950 Pennsylvania Ave., NW – G Street
Washington, DC 20530

E-mail address:  fairhousing@usdoj.gov

**TO BE INCLUDED IN THIS SETTLEMENT YOU MUST CALL OR WRITE BY**
**_____, 2016, AND YOUR MESSAGE OR LETTER MUST INCLUDE YOUR**
**NAME, ADDRESS AND AT LEAST ONE TELEPHONE NUMBER WHERE WE**
**CAN REACH YOU.**

## APPENDIX F

### Full and Final Release of Claims
#### (Información en español al reverso)

In consideration for the payment of $_____, I, _____ [**print name**], do hereby agree, to remise, release, and forever discharge any and all claims of any kind, nature or description whatsoever, related to the facts at issue in the litigation *United States v. Twin Oaks Mobile Home Park, Inc., et al.*, Case No. 14-cv-710 (W.D. Wisconsin), or in any way related to that litigation, up to and including the date of the entry of the Consent Decree, that I may have against Defendants Twin Oaks Mobile Home Park, Inc., M. Eugene Gutzmer, Sr., and Dennis Hansen; and their agents, employees, officers, members, estates, heirs, executors, spouses, administrators, successors, insurers, and assigns.

I acknowledge and understand that, by signing this Release, I am waiving any right to pursue my own legal action against Defendants Twin Oaks Mobile Home Park, Inc., M. Eugene Gutzmer, and Dennis Hansen based on the discrimination alleged by the United States in said case.

I also acknowledge that I have been informed that I may review the terms of this Release with an attorney of my choosing, and to the extent that I have not obtained legal advice, I voluntarily and knowingly waive my right to do so.

I waive any claims I may have against the United States, the Department of Justice, or its agents or employees, arising out of this action. This Release constitutes the entire agreement between Defendants and me, without exception or exclusion.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___ day of _____, 2015.

_____
Signature

_____
Print Name